## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FRED J. REBARBER-OCASIO** <br><br> PLAINTIFF <br><br> Vs. <br><br> **LUIS FELICIANO MUÑOZ; CHRISTEL BENGOA and the conjugal partnership constituted between them; A, B and C Insurance Companies, John Doe** <br><br> DEFENDANTS | **CIVIL NO: 18-1218 (GAG)** <br><br><br> **DAMAGES, BREACH OF CONTRACT, FRAUD** <br> (Trial by Jury is demanded) |

### FIRST AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** the Plaintiff, through the undersigned legal representation, and very respectfully **STATES, ALLEGUES, AND PRAYS** as follows:

### JURISDICTIONAL ALLEGATIONS

1. This Honorable Court is vested with jurisdiction over the parties and the subject matter of this litigation under and pursuant to the diversity of citizenship statute (Section 1332 c) of Title 28 of United States Code, 28 U.S.C 1332, in as much as there is complete diversity of citizenship between the Plaintiff, as resident of the state of Florida of the United States of America and the amount in controversy, exclusive of costs and interest, exceeds the amount of **Seventy-Five Thousand dollars ($75,000)**. As more specifically alleged below, all defendants are domiciled and permanent citizens of Puerto Rico within

1

the meaning of 28 U.S.C § 1332 and the Plaintiff is domiciled and permanent citizen of a state of the United State of America other than Puerto Rico.

2.  Venue is proper in this Court pursuant to Section 1391 of Title 28 of the United State Code, 28 U.S.C § 1391, because the claims asserted arose in this judicial district.

3.  Plaintiff requests a jury trial for all issues so triable.

## THE PARTIES

4.  Plaintiff Fred J. Rebarber-Ocasio ("Rebarber" or "the Plaintiff") is an individual, of legal age, married under a separate property regime, business executive and resident of Palms Coast, Florida, USA.

5.  Defendant Luis Feliciano Muñoz is an individual of legal age, married, business executive and resident of San Juan, Puerto Rico.

6.  Christel Bengoa is Luis Feliciano's spouse, and who benefits from his economic activity. Once her real identity is discovered, the fictitious name will be substituted for the real one.

7.  The Conjugal Partnership between Luis Feliciano and Christel Bengoa is the economical entity by virtue of marriage, constituted between Luis Feliciano and Jane Doe.

2

8.  Defendants A, B, and C Insurance Companies, is the fictitious name given to any insurance company that has issued policies to any of the Defendants, which cover the damages arising out of the cause of action alleged in the present Complaint. Once their real identity is discovered, the fictitious name will be substituted for the real one.

9.  All defendants are persons or corporations organized or with their principal place of business in the Commonwealth of Puerto Rico.

## ALLEGATIONS

1.  Air America, Inc. is a corporation incorporated since August 30, 2000, engaged in the air charter business, owning a certification issued on May 30, 2001 by the Federal Aviation Administration ("FAA") as an air carrier, to transport passengers and cargo throughout the Caribbean.

2.  From its incorporation up until December 17, 2014, the owner of the 100% of the stock of the corporation was Plaintiff Fred J. Rebarber-Ocasio.

3.  During all the uninterrupted fourteen (14) years that Mr. Rebarber oversaw the operations, neither Air America, nor the pilots or mechanics had any violation, any accident or any administrative action taken against any of them by the FAA.

4.  On September 2014, Mr. Rebarber-Ocasio was contacted by representatives of the Defendant Luis Feliciano, with a proposal to buy the Company.

3

5. From that moment on, both parties engaged in oral and written communications to culminate the selling agreement.

6. On December 17, 2014, Defendant Feliciano, personally and as representative of the conjugal partnership constituted between him and his spouse, and Plaintiff Rebarber executed a Stock Purchase Agreement ("SPA") in which Mr. Feliciano purchased from the Plaintiff eighty percent (80%) of all the issued and outstanding common stock and Plaintiff Rebarber remained owner of 20 % of all the issued and outstanding common stock of the Corporation.

7. According to the SPA and to a subsequent Amendment to the Certificate of Incorporation filed with the Department of State, Plaintiff Rebarber had to resign as an officer of the Company and Mr. Feliciano became the director in charge of all the operations, as president.

8. From December 17, 2014, the operations continued with Mr. Feliciano as president, overlooking the operations and all the administrative duties.

9. According to terms of the Amended Certificate of Incorporation filed with the State Department, the board of directors had the authority to manage the corporate operations.

10. Plaintiff Rebarber has been a shareholder, thus a member of the board of directors of the Corporation.

11. According to the SPA, Plaintiff Rebarber remained available to offer his consultation services.

4

12. Nevertheless, after March 2015, Plaintiff Rebarber was not contacted again to render any service.

13. From December 17, 2014, Rebarber has never been consulted, informed on any matter, cited to a meeting or shared anything related to the Corporation, even though his status as stock holder.

14. From December 17, 2014, on, Defendant Feliciano executed different actions against the best interest of the Corporation and of Plaintiff Rebarber.

15. Within some of the most outstanding acts and omissions of Defendant Feliciano against the best interest of the Corporation and in violation of the rights of Plaintiff Rebarber as a shareholder were the following:

16. Without consulting Plaintiff Rebarber or even informing him prior to the sale, Defendant Feliciano sold one Air America's airplane for at least $200,000 under the market value, without any valid reason.

17. Without consulting Plaintiff Rebarber or even informing him prior to the decisions, Defendant Feliciano incurred in unnecessary works on the airplanes, such as exterior paintings and the installation of equipment not required by regulation for their operations.

18. Ironically, while investing in unnecessary works and devices, Feliciano failed to hire the necessary number of pilots to fly the airplanes, having to subcontract other airlines to comply with the commitments, undermining the company's business and morale of the employees, and affecting Plaintiff's economical interest.

5

19. Within the acts and omissions of Defendant Feliciano against the law and affecting the company's interests, knowingly and with his personal authorization, he permitted pilots to fly against the Regulations in an unsafe and dangerous way.

20. With Defendant Feliciano's explicit instructions, pilots flew without the proper training and with his expressed consent, records were altered.

21. The lack of adequate pilot training and record keeping and the lack of adequate and proper controls of the company's operations under Feliciano's management, undermined the company's economical resources, the morale of the employee's, the public perception, thus Plaintiff's economical interest.

22. Plaintiff Rebarber, exercising his rights as a shareholder, unsuccessfully tried to obtain from Defendant Feliciano information and participate in the Corporation's decisions, including sending him at least two written communications, but Feliciano ignored them and did not answered them.

23. Defendant Feliciano failed to comply with the laws pertaining to corporations in Puerto Rico, failed to abide by the Company's bylaws and most important, disregarded important regulations regarding safe operations as prescribed by the FAA.

24. Under Feliciano's management and instructions, and worst, by his explicit orders, Air America failed to conduct the operations in a regulatory and safe manner, to the extreme of being charged by the FAA and

NTSB responsible for a fatal accident that led to an investigation that culminated is an emergency revocation of the airline's certificate by the FAA.

25. Such revocation is not only detrimental to the airline, but also to the economic interest of Plaintiff Rebarber.

26. If Feliciano had acted in compliance with the FAR's and if Feliciano had consulted his corporate decisions with shareholder Rebarber, the outcome would had been different, given Rebarber's experience and availability to render his services.

27. Defendant Feliciano's unilateral decisions constituted a breach of his fiduciary duty towards the Corporation and to Plaintiff Rebarber, and are the proximate cause of the damages suffered by the Company, Rebarber and third parties.

28. Defendant Feliciano, his spouse Christel Bengoa and the conjugal partnership constituted between them are therefore liable for the damages caused to Plaintiff as a result of his blatant disregard of the laws, the corporation's bylaws, violation of his fiduciary duties, breach of contract, fraud, negligent acts or omissions and intentional violations of the Federal Aviation Regulations that led to the depreciation of Plaintiff's economic interest.

29. Given that the principal asset remaining of the Corporation is Air America's aircrafts, it is in the best interest of the Corporation and of Plaintiff Rebarber's to order Defendant Feliciano to refrain from selling, cede, place a lien or in any way, dispose of the aircrafts or parts of the aircrafts as well as any other Company's assets, in order to avoid further damages.

7

**DAMAGES**

1. For all the acts and omissions of Defendant Feliciano against Plaintiff Rebarber's interests, causing damages to Plaintiff, Defendant Feliciano should respond as follows:

2. For the proportional income of the sale and for the reduction in the sale of the King Air airplane, an amount of no less than $97,000.

3. For the exclusion of Plaintiff Rebarber from the participation and information of the Corporate decisions in an estimated value of $150,000 ($75,00 per year, for 2015, 2016 and 2017)

4. For the lessening of the stock of the Plaintiff, in an amount calculated in no less than $350,000.

5. For the damage to the morale and professional image of Plaintiff Rebarber. Such damages are valued in an amount not less than Two Hundred Fifty Thousand dollars. ($250,000)

6. For the loss of the goodwill of the Company by having the certificate revoked, especially, given that the FAA is not granting more certificates, an amount no less than One Million, One Hundred Thousand dollars.

7. For a total of One Million Nine Hundred and Forty-Seven Thousand dollars ($1,947,000)

**TRIAL BY JURY DEMANDED**

8

8.  Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demand judgment against Defendants, requesting that this Honorable Court assures jurisdiction over the cause and judgment be entered jointly and severally against Defendants, and grants an amount of no less **than ONE MILLION NINE HUNDRED AND FORTY SEVEN THOUSAND DOLLARS ($1,947,000)**, plus an award for punitive damages allowed by law in an amount deemed necessary and just by this Honorable Court, as well as costs incurred, reasonable attorney's fees, to order Defendant Feliciano to refrain from selling, cede, place a lien or in any way, dispose of the aircrafts or parts of the aircrafts as well as any other Company's assets, and any other relief considered proper and just by this Honorable Court, under the circumstances.

**RESPECTFULLY SUBMITTED.**

In Caguas, Puerto Rico, this 1ST day of May 2018.

**CERTIFICATE OF SERVICE:** On this date, this document has been filed electronically with the Court's CM/ECF system.

Mercado Rivera Law Offices
PO Box 8086
Caguas, P.R. 00726-8086
Phone No: (787) 745-0628
(787) 390-6700
Fax No: (787) 961-9884
E-Mail: camercado@mercadoriveralaw.com

*S/Carlos A. Mercado Rivera*
USDC-NO. 211904

9